**POWELL ELECTRICAL SYSTEMS, INC. f/k/a Powell Electrical Manufacturing Company, Appellant and Cross–Appellee,**

v.

**HEWLETT PACKARD COMPANY, Appellee and Cross–Appellant.**

No. 01–09–00876–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 28, 2011.

Rehearing Overruled Aug. 12, 2011.

Thomas C. Wright, Wright & Close, L.L.P., Houston, TX, for Appellant.

Constance H. Pfeiffer, Troy Ray Ford, Beck, Redden, & Secrest, L.L.P., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

Crossed wires caused an on-site electrical transformer to blow, necessitating repairs and the use of a temporary trans-

## Background

HP owns a manufacturing facility in Houston with its own power substation. The substation uses a two-transformer system to power the facility. Powell designs, manufactures and installs electrical equipment. HP contracted with Powell to perform breaker retrofitting services at the substation. This process required Powell to remove breaker cables from the transformers' breaker cabinets and then reconnect them when the work was completed. Powell failed to document how the breaker cables were placed before removing them and unintentionally crossed certain breaker cables when it reconnected them. The cross-phased breaker cables caused one of HP's dual transformers, transformer B, to fail. As a result, HP incurred costs to repair transformer B and to obtain a temporary transformer for use while the repairs were made. HP brought this suit against Powell to recover for these costs.

After a trial on the merits, the jury found in favor of HP on its breach of contract and breach of express warranty claims against Powell, awarding HP $926,585.98 in damages and $163,526.24 for attorney's fees. The damages awarded by the jury included the following elements:

(a) fault testing and removal of transformer B: $76,518.03;

(b) disposal of oil from transformer B: $17,067.80;

(c) repair of transformer B: $581,024.20;

(d) cost of temporary transformer less amount for which it was sold: $105,097.26;

(e) installation and testing of temporary transformer: $73,718.15; and

(f) reinstallation of transformer B: $73,160.54.

former while the blown transformer was out of commission. The manufacturing plant owner sued its electrical services company for breach of contract and breach of warranty. The trial court rendered judgment on the jury's verdict favoring the owner. On appeal, Powell Electrical Systems, Inc. ("Powell") asserts that (1) all of the damages awarded by the jury are contractually barred consequential damages, (2) because the damages are barred, Hewlett Packard Company ("HP") is not entitled to attorney's fees as a prevailing party, and (3) the liability questions that the trial court submitted erroneously conflate proper and improper theories of liability. In a cross-appeal, HP argues that the jury's damages and attorney's fees findings impermissibly reduce the awards to fifteen percent less than the amount conclusively established by the evidence and that it is entitled to appellate attorney's fees.

We conclude that (1) most of the damages the jury awarded are direct damages, but the damages relating to loss of use are consequential damages, (2) the jury charge is proper, (3) HP did not establish the full amount of its damages as a matter of law and thus is not entitled to an increased award, (4) the jury's take-nothing award for appellate attorney's fees is not supported by legally sufficient evidence, and (5) in light of our reduction of HP's damages, the jury's award for attorney's fees at trial must also be remanded. We therefore reverse the trial court's judgment with respect to the award of damages pursuant to the jury findings on damage elements (d) and (e), relating to costs for loss of use, and reform the judgment accordingly. We reverse the trial court's judgment with respect to the award of attorney's fees at trial and on appeal and remand those issues. We affirm the trial court's judgment in all other respects.

The jury's findings on damages and attorney's fees are approximately fifteen percent less than the amount HP sought at trial, except that the jury refused to award any fees for an appeal. HP asked the trial court to enter judgment on the jury verdict in its favor but to award the full amount it sought. Powell asked the trial court to disregard the jury findings, asserting that the damages found are barred by the limitations of liability in the contract. The trial court denied both parties' motions and rendered judgment on the verdict, reducing the total damages award to $876,810.61 to account for an offset and awarding pre- and post-judgment interest.

## Contractual Limitation on Consequential Damages

Powell contends that the trial court erred in denying Powell's motions to disregard the jury finding on damages. Powell argues that the damages found by the jury are consequential damages, which are barred under the terms of the parties' contract. HP responds that the damages are direct damages, rather than consequential damages. The parties agree that their contract bars consequential damages but not direct damages.[1]

### A. Standard of Review

The dispute between the parties is whether the damages awarded in this case constitute direct or consequential damages under Texas law. We review such questions of law de novo. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994); *Harris Cnty. Appraisal Dist. v. Wilkinson*, 317 S.W.3d 763, 766 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). Likewise the interpretation of unambiguous contracts is a legal question that we review de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999); *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 209 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

### B. Applicable Law on Damages

#### 1. Direct Damages

Direct damages are those damages that flow naturally *and necessarily* from the breach. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex.1997) (emphasis added). "Direct damages compensate for the loss, damage, or injury that is conclusively presumed to have been foreseen or contemplated by the party as a consequence of his breach of contract or wrongful act." *Id.* "By definition, if particular damages are specifically accounted for in the contract, they are direct, not consequential, in nature." *McKinney & Moore, Inc. v. City of Longview*, No. 14–08–00628–CV, 2009 WL 4577348, *5 (Tex.App.-Houston [14th Dist.] Dec. 8, 2009, pet. denied) (mem. op.) (citing *Boyer, Inc. v. Trinity River Auth. of Tex.*, 279 S.W.3d 354, 358 (Tex.App.-Fort Worth 2008, pet. denied));[2] *see also Tennessee*

---

1. The "Warranty" provisions of the contract provide:

 IN NO EVENT WILL EITHER PARTY BE RESPONSIBLE TO THE OTHER FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS WARRANTY....

 The "Indemnification and Remedies" provisions of the contract provide:

 NEITHER PARTY SHALL BE LIABLE FOR ANY CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOST PROFITS AND UNLIQUIDATED INVENTORY), INDIRECT, SPECIAL OR PUNITIVE DAMAGES EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES....

2. In *McKinney*, the Fourteenth Court of Appeals held that extra expenses incurred under a construction contract were direct damages because they were contemplated in a contract provision that required the defendant to reimburse the plaintiff for damage occurring dur-

*Gas Pipeline Co. v. Technip USA Corp.*, No. 01–06–00535–CV, 2008 WL 3876141, at *8–9 (Tex.App.-Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.).

Examples of direct damages can be found in our decision in *Tennessee Gas Pipeline.* In that case, a pipeline owner, Tennessee Gas Pipeline ("TGP"), sought to recover damages for Technip's delayed and defective construction work on a pipeline. *Tennessee Gas Pipeline,* 2008 WL 3876141, at *8. The parties' contract precluded recovery of consequential damages, and we reviewed the various categories of damages awarded to determine which damages were consequential damages and which were direct. *Id.* at *8–10. We concluded that various "project delay costs"—including costs for labor, travel, environmental contractors, inspectors, purchase and supply of additional construction consumables, wastewater hauling, services and utilities—were direct damages, because the contract contained a provision requiring TGP to provide power during construction. *Id.* at *8–9. On this basis, we concluded that Technip contemplated that its construction delay would naturally and necessarily cause TGP's power costs to be extended over a longer period of time. *Id.; see also McKinney & Moore, Inc.,* 2009 WL 4577348, at *5.

### 2. Consequential Damages

 "Consequential damages" are those which result naturally, *but not necessarily,* from the breach. *Arthur Andersen,* 945 S.W.2d at 816 (emphasis added); *see Stuart v. Bayless,* 964 S.W.2d 920, 921 (Tex.1998). . Consequential damages are recoverable only if they are foreseeable and directly traceable to the wrongful act and result from it. *Stuart,* 964 S.W.2d at

ing work on project that were caused by negligence or fault of defendant or its agents. *McKinney & Moore, Inc. v. City of Longview,*

921; *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.,* 348 S.W.3d 894, 901 (Tex.2011) (quoting *Stuart* ).

*Tennessee Gas Pipeline* also provides examples of consequential damages. We held that TGP could not recover for the cost of renting a backup generator after a power outage occurred, which TGP asserted would not have been necessary but for Technip's premature dismantling of the existing backup generator before the new generator was fully operational. *Tennessee Gas Pipeline,* 2008 WL 3876141, at *9–10. We concluded that the power outage and need for a backup generator could not be conclusively presumed to have been foreseen by the parties as a consequence of Technip's breach. *Id.* We also precluded as consequential damages TGP's alleged losses relating to (1) lost efficiency from the extended use of the old compressor rather than the new compressor, (2) lost investment returns on funds tied up during the delay, (3) costs incurred as a penalty under TGP's contract with the utility company for delayed commencement of utilities use, and (4) lost profits on gas that TGP was unable to sell because it had to be used for venting and to perform emergency shutdowns. *Id.* at 10–11.

### C. Analysis

We conclude that some of the damages awarded to HP are permitted direct damages and some are impermissible consequential damages.

### 1. Costs Relating to Transformer B: Damage Elements (a), (b), (c) & (f)

 Damages that flow "naturally and necessarily" from a breach of the parties' contract are those inherent in the

No. 14–08–006280CV, 2009 WL 4577348, at *5–6 (Tex.App.-Houston [14th Dist.] Dec. 8, 2009, pet. denied).

nature of the breach of the obligation between the parties, as compared to those damages that flow "naturally but not necessarily" from the breach because they require the existence of some other fact (known or unknown) beyond the relationship between the parties. *Cf. Tennessee Gas Pipeline*, 2008 WL 3876141, at *9–10 (holding that cost for backup generator necessitated by power outage were consequential damages of defendant's premature dismantling of old generator and costs for penalty under utility contract for delayed use of utilities were consequential damages from construction delay because the cost depended on terms of owner's contract with third party utility company); *Hoppenstein Props., Inc. v. McLennan Cnty. Appraisal Dist.*, 341 S.W.3d 16, 21 (Tex.App.-Waco 2010, no pet.) (profits that plaintiff would have realized under contract between parties are direct damages, while profits plaintiff would have realized on other contracts are consequential damages); *Cherokee Cnty. Cogeneration Partners v. Dynegy Mktg. & Trade*, 305 S.W.3d 309, 314 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (same).

■ Here, the damages to transformer B are inherent in the nature of the breach of Powell's contractual and warranty obligations to HP. Powell's re-energizing of transformer B while the B-side breakers were cross-phased caused transformer B to fail, and the failure of transformer B necessitated its testing, removal, oil dis-

posal, repair and reinstallation. No additional link in the causal chain was necessary to bring about the injury or damages. The parties can be "conclusively presumed to have foreseen" that Powell's substandard performance would result in the failure of the transformer and that failure of a transformer would require HP to incur costs associated with repairing it. *Cf. Arthur Andersen*, 945 S.W.2d at 816.

We are not persuaded otherwise by Powell's argument that direct damages in this case should be limited to the cost of uncrossing the wrongfully crossed cables or the difference between the value of Powell's actual services and the value of the services as promised by Powell. As an initial matter, contrary to Powell's narrow construction of the contract, the subject of the contract is Powell's "Electrical Contractor work for [HP] related to the Willow Substation 34.5KV Breaker Retrofit," which the evidence shows necessarily included temporarily unhooking the breaker cables from transformer B's breaker cabinet and then putting them back. This does not appear to have been disputed at trial, and Powell's own employee averred that "[t]he scope of the Powell/HP contract included the unlanding and relanding of the feeder cables to the circuit breakers."

The contract expressly contemplates that testing and repair costs may be incurred as a result of defective performance by Powell.[3] *See McKinney & Moore, Inc.*,

---

3. Pursuant to its warranty, Powell promises in the contract to "pay for damages to other work" resulting from a breach of its warranty. Additionally, the contract contains provisions specifically identifying for which costs HP will reimburse Powell and for which costs it will not. Under these provisions HP must reimburse Powell for:

 h. Fees for laboratory testing required by the Contract Documents, (if applicable), except those related to defective or nonconforming Work.

. . .

 k. Costs of repairing or correcting work damaged or non-conforming Work executed by [Powell], Subcontractors or Suppliers, provided such damage or non-conforming Work was not caused by the negligence or failure to fulfill a specific responsibility of [Powell.]

 HP will not reimburse Powell for:

 f. Costs due to the negligence or failure to fulfill specific responsibility of [Powell], Subcontractors and suppliers or anyone di-

2009 WL 4577348, at *5 (holding that expenses incurred under construction contract were direct damages because they were contemplated in contract provision that required defendant to reimburse plaintiff for damage occurring during work on project and that were caused by negligence or fault of defendant or its agents); *Tennessee Gas Pipeline Co.*, 2008 WL 3876141, at *8–9 (holding costs of providing power during construction delay were direct damages because contract provision specified that owner would provide electricity to construction site). Powell asserts that these provisions refer to the correction or repair of "Work," which is defined in the contract as Powell's own work, and thus do not extend to damages to transformer B, which Powell asserts is not the subject of its work. Powell's narrow definition of its services under the contract is not consistent with the evidence; moreover, these provisions of the contract do not refer only to the defined, capitalized term "Work," but also refer to "damages to other work" and costs of repairing "work damaged" by Powell's poor performance. The contract contains a provision requiring HP to provide power during Powell's work; this provision expressly states that Powell is responsible for the proper use of the power HP supplies.

To support its contention that HP's damages should be limited, Powell relies on *Reynolds Metals Co. v. Westinghouse Electric Corp.*, 758 F.2d 1073 (5th Cir. 1985). The dispute in *Reynolds* arose out of a contract between Westinghouse and Reynolds for the purchase and installation of a transformer at Reynolds's facility in Corpus Christi, Texas. *Id.* at 1074. The transformer had a design defect, which caused internal burning; additionally,

Westinghouse improperly installed the transformer's system for the detection of ground current. *Id.* The internal burning caused the transformer to fail. *Id.* at 1075. The improperly installed detection system contributed to the problem by not alerting Reynolds of the problem prior to the transformer's failure. *Id.* At the time of trial, Reynolds had two claims against Westinghouse: (1) breach of warranty, based on the defect in the transformer and (2) breach of contract, based on the improper installation of the ground current detection system. *Id.* at 1076–77. The district court entered a directed verdict on the warranty claims on the basis of the applicable statutes of limitations, and the jury found in Reynolds' favor on the breach of contract claim. *Id.* at 1078–79. The trial court entered judgment on the jury's award for the cost of repairing the transformer but excluded damages for lost profits and the costs of transporting the transformer to and from Houston for repairs as consequential damages, which were precluded under the parties' contract. *Id.* at 1078–79. On appeal, Westinghouse argued that the cost of repairs were also consequential damages excluded under the contract. *Id.* at 1079. The Fifth Circuit agreed, holding that the proper measure of damages in that case was the difference in the value of what was promised under the contract and what was actually delivered— the measure of damages that would apply to a sale of goods under Chapter 2 of the Texas Business and Commerce Code (the "UCC"). *Id.* at 1079–80 (citing TEX. BUS. & COM.CODE ANN. § 2.714 (West 2009)).

Powell asserts that *Reynolds* stands for the proposition that anything other than the difference in value between what was bargained for and what was re-

rectly or indirectly employed by any of them or for whose acts any of them may be

liable.

ceived constitutes consequential damages. We disagree with that characterization of *Reynolds*.[4] The application of the UCC measure of damages in *Reynolds* is understandable in light of the circumstances of the case: as the Fifth Circuit noted, the primary cause of Reynolds's damages was the burning in the transformer (for which Reynolds could not recover due to limitations); the improper installation (for which Reynolds could recover) contributed to the damages only to the extent they could have been prevented by earlier discovery. *Id.* at 1076–77 and n. 6. The design defect, for which Reynolds could not recover, was a causal link that brought about Reynolds's damages. Westinghouse's improper installation of the detection system was one step removed. *See Reynolds*, 758 F.2d at 1076–77, 1080; *Tennessee Gas Pipeline*, 2008 WL 3876141 at *9–10. No such intervening causal link is present here.

The measure of damages used in *Reynolds* would not properly compensate HP under the circumstances of this case, where Powell's breach of the contract and its warranties were the direct cause of HP's damages. We hold that HP's costs of repair to the unit that Powell serviced and destroyed are direct damages resulting from Powell's breach.

## 2. Costs for Relating to Temporary Transformer: Damage Elements (d) & (e)

■■■ Powell suggests that all of HP's damages constitute "loss of use" damages and are therefore consequential. While HP's costs relating to the repair of transformer B are not loss of use damages,

HP's decision to install a temporary transformer and use it while transformer B was being repaired are lost use damages. Like lost profits, lost use damages are frequently, but not categorically, consequential in nature. *See Tennessee Gas Pipeline*, 2008 WL 3876141 at *8, 10 (holding that provision barring recovery of consequential damages did not necessarily bar all loss of use damages but damages for loss of use of money were consequential). Here, we conclude that HP's costs relating to the temporary transformer are consequential rather than direct damages.

HP's power substation is designed to run on a two-transformer system, but the evidence demonstrates that it can run with only one transformer for some period of time and that the ability to run on one transformer was a necessary part of Powell's performance of its work under the contract pursuant to the parties' agreed procedures for the work. We cannot conclude that Powell and HP may be "conclusively presumed to have foreseen" that Powell's breach would necessitate the use of a temporary transformer. *See Arthur Andersen*, 945 S.W.2d at 816. We therefore conclude that HP's costs in obtaining and installing the temporary transformer are consequential damages.

We overrule Powell's first issue with respect to damage elements (a), (b), (c) and (f), and we sustain Powell's first issue with respect to damages elements (d) and (e).

### Attorney's fees Under Section 38.001

Powell's argument that HP cannot recover attorney's fees under Section 38.001 of the Civil Practices and Remedies Code

---

4. We note that Texas law distinguishes between consequential damages at common law and consequential damages under the UCC, which governs contracts for the sale of goods. *Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 329 S.W.3d 628, 637–38 (Tex.App.-Houston [14th Dist.] 2010, no pet.); *Wade & Sons, Inc. v. Am. Standard, Inc.*, 127 S.W.3d 814, 823–24 (Tex.App.-San Antonio 2003, pet. denied).

is predicated on Powell prevailing on its first issue in its entirety, such that HP recovers no damages. Because we conclude HP is entitled to recover some damages, we also conclude that attorney's fees are authorized under Section 38.001.[5] TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (West 2008); *see also Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997) (holding that a party may recover attorney's fees under Section 38.001 only if the party prevails on a cause of action for which attorney's fees are available and recovers damages).

We overrule Powell's second issue.

### Jury Charge

The trial court's jury charge contained broad form liability questions for breach of contract and breach of warranty.[6] Powell argues that these broad form questions impermissibly commingled valid and invalid theories of liability. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 379, 389 (Tex.2000). Specifically, Powell argues that HP pursued multiple alleged breaches of the contract and warranty but some of these theories of liability were not supported by evidence on the element of causation. Powell asserts that it preserved this issue for appeal by timely objecting to the form of the questions and tendering substantially correct questions to the trial court. HP responds that it had only a single theory of liability for breach of contract and for breach of warranty, but that these theories were supported by multiple factual bases. HP asserts that broad form submission was appropriate under these circumstances.

### A. Standard of Review

We review a challenge to the trial court's jury charge under an abuse of discretion standard. *Tex. Dep't of Hum. Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990); *Moss v. Waste Mgmt. of Tex., Inc.,* 305 S.W.3d 76, 81 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) (citing *European Crossroads' Shopping Ctr., Ltd. v. Criswell,* 910 S.W.2d 45, 54 (Tex.App.-Dallas 1995, writ denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *Tex. Dep't of Hum. Servs.,* 802 S.W.2d at 649; *Moss,* 305 S.W.3d at 81. A trial court has wide discretion in submitting instructions and jury questions. *Moss,* 305 S.W.3d at 81 (citing *Howell Crude Oil Co. v. Donna Ref. Partners, Ltd.,* 928 S.W.2d 100, 110 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

 If we determine that the jury charge was erroneous, we must then consider whether the error requires reversal. *See, e.g., Transcon. Ins. Co. v. Crump,* 330 S.W.3d 211, 221 (Tex.2010). Generally, charge error requires reversal of a judgment only where the error was harmful in the sense that it probably caused rendition of an improper verdict. *Id.* (quoting *Columbia Rio Grande Healthcare, LP v. Hawley,* 284 S.W.3d 851, 856 (Tex.2009)). In the context of a *Casteel* problem, however, the comingling of valid and invalid theories of liability in a single jury question may make it impossible for the court of appeals to determine whether the jury based its verdict on a properly submitted theory or on an invalid theory that should not have been submitted. *See Casteel,* 22 S.W.3d at 388 (finding harmful error

---

**5.** As discussed below, we reverse and remand the jury's award of attorney's fees on other grounds.

**6.** Question 1 asked, "Did Powell fail to comply with the Contract?" The jury answered, "Yes." Question 2 asked, "Did Powell fail to comply with an express warranty?" The jury answered, "Yes."

where trial court's charge contained broad-form liability question that submitted, along with valid theories of liability, theories of liability under the Deceptive Trade Practices Act ("DTPA") that plaintiff could not assert because he was not a consumer). In that situation, the error will be deemed harmful and the new trial is required. *Id.* at 388–89.

**B. The Jury Charge Was Not Erroneous**

██ A trial court errs by submitting to the jury theories of liability that are not legally viable—e.g., liability theories that have not been pled, are not supported by the legally sufficient evidence, or are not supported by operative law. *See* Tex.R. Civ. P. 277 (requiring that the trial court submit issues that are raised by the pleadings and the evidence); *Casteel,* 22 S.W.3d at 390 (stating that Rule 277 implicitly mandates that the jury be able to base its verdict on legally valid questions and instructions); *see also Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 215 (Tex.2005) ("[B]road-form submission cannot be used to put before the jury issues that have no basis in the law or the evidence."). Thus, although Rule 277 of the Texas Rules of Civil Procedure requires the trial court to submit broad-form questions whenever feasible, submission of broad-form liability question may be infeasible when the trial court is uncertain about whether particular theories of liability should be submitted. Tex.R. Civ. P. 277; *Casteel,* 22 S.W.3d at 390. In that circumstance, judicial economy may favor separate submission of liability theories to prevent the need to re-try the cause of action if the trial court reaches an incorrect decision with regard to which theories of liability should be submitted to the jury. *Casteel,* 22 S.W.3d at 390.

**1. Question 1: Breach of Contract**

Powell argues that HP advanced eleven theories of contract liability at trial, reciting the eleven breaches listed in HP's petition. Powell argues that some of these theories were valid and some were invalid. Powell points to evidence in the record of three alleged breaches other than the cross-phasing of the breakers: Powell's failure to properly connect internal CT wires, to keep its work site clean, and to live up to its contractual obligations after transformer B failed.

HP responds that Powell's argument inaccurately equates "theories of liability" with factual allegations, when the term is properly understood to relate to causes of action such as breach of contract or breach of warranty. HP asserts that the two liability questions submitted only a single theory of liability, each of which was supported by several factual bases. HP points out that the Supreme Court of Texas has "limited [its] holdings in *Casteel* and *Harris County* to submission of a broad-form question incorporating multiple theories of liability or multiple damage elements." *Bed, Bath & Beyond, Inc. v. Urista,* 211 S.W.3d 753, 756–57 (Tex.2006) (citing *Casteel,* 22 S.W.3d at 388 and *Harris County v. Smith,* 96 S.W.3d 230, 233 (Tex.2002), which applied *Casteel* analysis to submission of an unsupported element of damages). HP also asserts that, while there may have been evidence that Powell's conduct breached the contract in multiple ways, "HP's whole theory of the case focused on *one* breach that resulted in the damages to transformer B—*i.e.* cross-phasing the breaker cables." HP never contended that any other breach caused damages, so there was no risk that the jury might find damages based on evidence of other breaches.

We conclude that HP's evidence relating to Powell's failure to properly connect CT

wires, keep its work site clean, and provide assistance after transformer B failed did not result in the submission of invalid theories of liability. In reaching this conclusion, we look to the distinction recognized by the Supreme Court of Texas in *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 864 (Tex.2009) between the jury charge in that case and the jury charge in *Columbia Medical Center of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835 (Tex.App.-Fort Worth 2003, pet. denied). The *Hawley* court found error in the jury charge; the *Bush* court found no error.

In *Bush*, the medical center argued on appeal that the court improperly submitted invalid theories of liability because some of the specific acts of negligence pled by the plaintiff were not supported by evidence. *Bush*, 122 S.W.3d at 857. The medical center asserted that the trial court erred by refusing its proposed limiting instructions to the jury not to consider those specific acts of negligence. *Id.* at 857–58. The court of appeals affirmed the trial court's judgment, concluding that the charge "properly submitted one theory of liability and recovery—negligence—in a single broad-form question." *Id.*

In *Hawley*, the trial court submitted a broad-form jury question on negligence and included in the charge an instruction that the defendant-hospital acted "through its employees, agents, nurses and servants." The trial court denied the hospital's request that the jury be instructed not to consider the acts of a particular defendant-doctor, Dr. Valencia, in determining whether the hospital was negligent because Dr. Valencia was an independent contractor for whose conduct the hospital could not be held liable. *Hawley*, 284 S.W.3d at 862–63. The supreme court held that the charge was erroneous because the instruction on "employees, agents, nurses and servants" allowed the jury to improperly determine that the hospital was negligent based only on the conduct of Dr. Valencia. *Id.* at 864–65.

Comparing the issue presented in *Hawley* to the issue presented in *Bush*, the supreme court observed that in both cases, "negligence was the only theory of liability submitted." *Id.* at 864. The court distinguished the two cases on the ground that the hospital in *Hawley* was complaining "because the charge affirmatively told the jury that the hospital acted through its employees, agents, nurses, and servants and allowed the jury to speculate whether Dr. Valencia was an agent of the hospital"; it was not complaining of "the failure to instruct the jury that it should not consider specific acts of negligence." *Id.* The court then observed that, considering the question and the instruction together, the trial court's charge "submitted four negligence questions," one for each set of actors identified in the instruction. *Id.*

Here, Powell did not request an instruction that the jury not consider its failure to properly connect CT wires, keep its work site clean, and provide assistance after the transformer failed in determining whether it breached the contract. Because "Question 1" submitted only a single theory of liability and the trial court did not otherwise instruct the jury to consider erroneous matters, we conclude that the trial court did not err by submitting an invalid theory of liability in "Question 1." *Cf. Bush*, 122 S.W.3d at 857–58; *Bed, Bath & Beyond, Inc.*, 211 S.W.3d at 757 ("When, as here, the broad-form questions submitted a single liability theory (negligence) to the jury, *Casteel's* multiple-liability-theory analysis does not apply."); *Mustafa v. Matrut*, No. 01–08–00985–CV, 2010 WL 1492419, at *4–5 (Tex.App.-Houston [1st Dist.] Apr. 15, 2010) (mem. op.), *supplemented*, No. 01–08–00985–CV, 2010 WL

1839944 (Tex.App.-Houston [1st Dist.] May 6, 2010, no pet.) (mem. op.) (holding that evidence of nonpayment of salary and writing of bad checks did not result in submission of unpled theories of fraud liability, where evidence supported pled fraud claim based on non-payment of loan); *Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 455 (Tex.App.-Corpus Christi 2006, pet. denied) (op. on rehearing en banc) ("*Casteel* applies to multiple theories of liability; by contrast, the instant situation involves only one—fraud .... *Casteel* does not require a granulated submission as to multiple acts under a single theory of liability.").

## 2. Question 2: Breach of Warranty

The breach of warranty question proposed by Powell submitted breach of express warranty as a single jury finding, not segmented by particular factual basis or theories, but it included an instruction restating the express warranty provided under the parties' contract. To the extent Powell argues that the trial court erred in refusing to include its breach of warranty instruction, Powell does not demonstrate how its proposed instruction would have prevented the jury from considering any improperly submitted theory of liability or why the instruction was otherwise necessary. Nor does Powell point to any evidence in the record that might have caused the jury to find a breach of warranty based on conduct and that would have been excluded under Powell's proposed instruction. We conclude the trial court was within its discretion in declining to submit Powell's proposed instruction. *See Bush*, 122 S.W.3d at 857–58 (holding that trial court did not err in refusing instruction that would have directed jurors not to

consider specific acts of negligence in determining medical center's liability).

## Cross–Appeal on Amount of Damages and Fees Awarded

On cross-appeal, HP argues that the jury impermissibly reduced the amount of damages and attorney's fees by fifteen percent,[7] under a comparative fault theory. HP argues that it established the amount of its damages and attorney's fees as a matter of law, and the trial court should have disregarded the juries' answers on these issues and rendered judgment notwithstanding the verdict for the full amounts proven. Powell responds that the jury awarded less damages than HP claimed because HP failed to establish that all of its damages resulted from Powell's breach, and that the jury awarded less attorney's fees than HP claimed because HP failed to prove that all of the fees sought were reasonable and necessary. We reverse and remand the issue of attorney's fees in light of our reduction of the damages award and because the jury's take-nothing award on appellate attorney's fees is not supported by legally sufficient evidence.

### A. Standard of Review

 Powell raises a legal sufficiency challenge to the jury's damage and attorneys' fee findings. When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (addressing standard of review with respect to jury finding of $0 in damages for retaliation

---

7. The fifteen percent reduction does not apply to the jury award for attorney's fees on ap-

peal, which was $0.

claim) (citing *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989)). In conducting a legal sufficiency review, we review the evidence presented below in the light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 770 (Tex.2010); *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). HP's issue will be sustained only if its position is conclusively established by the evidence. *Francis,* 46 S.W.3d at 241 (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

**B. HP Did Not Conclusively Prove the Amount of Its Damages**

HP contends that the proper amount of its damages award is conclusively established by the invoices it submitted. HP points to no other evidence as establishing its right to damages in the amount claimed. The invoices may establish that HP spent the amounts shown in the invoices relating to transporting and repairing transformer B, but they do not establish HP's right to recover all of the amounts expended as a matter of law. As Powell notes, there was evidence from which the jury could have concluded that Powell did not proximately cause all of these costs. There is evidence in the record tending to show that transformer B was fifteen years old, had experienced prior faults, was not properly maintained, and had pre-existing damage or deterioration. There is also evidence in the record that the useful life of a transformer like transformer B is twenty to twenty-five years on average, as well as evidence that the repairs and replacement of parts in transformer B may have left the transformer a better condition than it had been before the failure.

■■■ The trier of fact is given broad discretion to award damages within the range of evidence presented at trial. *Duggan v. Marshall,* 7 S.W.3d 888, 893 (Tex. App.-Houston [1st Dist.] 1999, no pet.) (citing *City of Houston v. Harris Cnty. Outdoor Adver. Ass'n,* 879 S.W.2d 322, 334 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Potter v. GMP, L.L.C,* 141 S.W.3d 698, 703 (Tex.App.-San Antonio 2004, pet. dism'd) (citing *VingCard A.S. v. Merrimac Hospitality Sys., Inc.,* 59 S.W.3d 847, 865 (Tex.App.-Fort Worth 2001, pet. denied) and *Duggan,* 7 S.W.3d at 893). Evidence corresponding to the exact amount found by the trier of fact is not essential. *Gibson Plumbing Heating & Air Conditioning, Inc. v. Coolbaugh Chiropractic,* No. 07-05-0449-CV, 2007 WL 763806, at *3 (Tex.App.-Amarillo Mar. 14, 2007, no pet.) (mem. op.) (affirming jury award of amount less than total owed under bills in evidence) (citing *Carrow v. Bayliner Marine Corp.,* 781 S.W.2d 691, 695 (Tex.App.-Austin 1989, no writ)); *see also Reeder v. Wood Cnty. Energy LLC,* 320 S.W.3d 433, 448 (Tex.App.-Tyler 2010, pet. filed) (stating, in this context, damages must be established with reasonable certainty, not mathematical precision) (citing *O & B Farms, Inc. v. Black,* 300 S.W.3d 418, 422 (Tex.App.-Houston [14th Dist.] 2009, pet. filed)).

■■■ Here, the jury could reasonably have concluded that approximately fifteen percent of the repairs to the transformer was the result of pre-existing damage to the transformer or was attributable to pre-existing deterioration in the value of the transformer. The jury also may have reasonably concluded that not all of the costs expended by HP were necessary to put HP in the position it would have been in but for Powell's breach, based on the evidence that the replacement of certain of transformer B's parts resulted in an im-

provement upon the pre-failure condition of the transformer. *Cf. Mesquite Elks Lodge No. 2404 v. Shaikh,* 334 S.W.3d 319, 322–23 (Tex.App.-Dallas 2010, no pet.) (holding that evidence was not factually sufficient to support award of all repair costs sought in breach of contract suit where there was evidence that some repairs resulted in improvement rather than restoring pre-breach condition); *Neuman v. Spector Wrecking & Salvage Co., Inc.,* 490 S.W.2d 875, 878 (Tex.Civ.App.-Beaumont 1973, no writ) ("Even when it is proper to assess the damages as the cost of repairs, '(a) plaintiff is not to be put in a better position by the recovery of damages for the breach of contract than he would have been if there had been performance.' ").

 Thus, the range of evidence presented to the jury could reasonably allow it to find some but not all of the repair costs paid by HP were the proximate result of Powell's breach. Because the jury's award falls within this range, "[w]e are not permitted to disregard the jury's damages award on the basis that the jury's reasoning in arriving at its figure is unclear." *Duggan,* 7 S.W.3d at 893; *see also Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 709–10 (Tex.App.-Houston [1st Dist.] 1988, writ denied) ("Neither are we permitted to disregard the jury's answers to the issues merely because the jury's reasoning in arriving at its figure may be unclear to us."). We conclude that legally sufficient evidence supports the jury's award of damages. *Cf. Duggan,* 7 S.W.3d at 893 (determining that jury award of $232,500 was supported by sufficient evidence in light of conflicting damage estimates of $425,309, $15,000, $236,000 and $165,356); *Adams,* 754 S.W.2d at 709 (noting that jury award was "substantially less than the amount that the evidence shows [plaintiff] had already paid" but within range of damages

supported by evidence, and "in reviewing the adequacy of damages, we may not substitute our judgment for that of the jury."); *Potter,* 141 S.W.3d at 703–04 (affirming jury award of $189,595 as within the range of evidence in breach of contract case); *Vela v. Wagner & Brown, Ltd.,* 203 S.W.3d 37, 50 (Tex.App.-San Antonio 2006, no pet.) (jury was free to reject in part expert damage models of $13.9 million and $9.4 million and instead award $3 million in damages); *Howell Crude Oil Co. v. Donna Ref. Partners, Ltd.,* 928 S.W.2d 100, 108 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (affirming jury award of less than damages calculation presented where challenges were made to reliability of calculation).

**C. HP Did Not Conclusively Prove the Amount of Its Attorney's fees, But Established Its Right to Some Attorney's fees**

The jury awarded attorney's fees of $163,526.24 for preparation and trial and $0 for an appeal to the court of appeals. HP argues that the trial court should have disregarded these findings and awarded $192,383.81 for preparation and trial and $50,000 for an appeal to the court of appeals because HP's evidence conclusively proved these amounts as its reasonable and necessary attorney's fees through the submission of bills and attorney testimony. Powell responds that it disputed the amount of fees requested by HP, that HP's fee segregation evidence was "incredible on its face," that HP's own counsel admitted that the requested fees included amounts that would result in a double recovery if court costs were separately awarded, and that the reasonableness and necessity of the fees is a question of fact within the purview of the jury.

 An award of attorney's fees must be supported by evidence that the fees were both reasonable and necessary.

*See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991), *modified on other grounds by Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313–14 (Tex.2006); *Crounse v. State Farm Mut. Auto. Ins. Co.,* 336 S.W.3d 717, 720–21 (Tex.App.-Houston [1st Dist.] 2010, no pet.). "Generally, the determination of reasonable attorney's fees is a question of fact and the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury." *Garcia v. Gomez,* 319 S.W.3d 638, 642 (Tex.2010) (quoting *Smith v. Patrick W.Y. Tam Trust,* 296 S.W.3d 545, 547 (Tex. 2009), which in turn quotes *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990)) (internal quotation marks omitted). Thus, where the issue is raised by the evidence, it is within the province of the jury to determine the reasonable value of an attorney's services. *See Crounse,* 336 S.W.3d at 720–21 (citing *Ragsdale,* 801 S.W.2d at 881–82); *Great Am. Reserve Ins. Co. v. Britton,* 406 S.W.2d 901, 907 (Tex.1966); *Tesoro Petroleum Corp. v. Coastal Ref. & Mktg., Inc.,* 754 S.W.2d 764, 767 (Tex.App.-Houston [1st Dist.] 1988, writ denied)); *Gunter v. Bailey,* 808 S.W.2d 163, 166 (Tex.App.-El Paso 1991, no writ). Expert testimony regarding attorney's fees is not conclusive and the trier of fact is not bound by such testimony. *Gunter,* 808 S.W.2d at 166; *Matthiessen v. Schaefer,* 897 S.W.2d 825, 826 (Tex.App.-San Antonio 1994), *rev'd on other grounds,* 915 S.W.2d 479 (Tex.1995). The trier of fact can consider the amount in controversy, the time and effort required, and the expertise of counsel in arriving at a reasonable amount of attor-

ney's fees. *Gunter,* 808 S.W.2d at 166; *Matthiessen,* 897 S.W.2d at 826.

### 1. Attorney's Fees for Preparation and Trial

 Here, HP's bills and attorney testimony establish the amount HP paid its attorneys but do not conclusively establish that this amount was reasonable and necessary. *See Garcia,* 319 S.W.3d at 642 (rejecting plaintiff's argument that his attorney's testimony concerning reasonable attorney's fees conclusively established amount of fees and holding that such testimony was some, but not conclusive, evidence of a reasonable fee). It is within the jury's discretion to determine that the reasonable value of the attorneys' services employed by HP was less than the amount billed by the attorneys. *See id.* Likewise, because the jury awarded HP less than the full damages it requested, the jury may have determined that this outcome warranted a lesser fee than that requested by HP. *See Smith,* 296 S.W.3d at 548–49 (holding that court of appeals erred by rendering judgment for full amount of attorney's fees sought after reversing $0 fee award because jury awarded less in damages than amount sought and therefore uncontroverted attorney testimony on amount of attorney's fees did not establish amount of reasonable and necessary fees as a matter of law); *see also Gunter,* 808 S.W.2d at 166; *Matthiessen,* 897 S.W.2d at 826. There was also evidence before the jury from which the jury reasonably could have concluded that the attorney's fees sought by HP should be reduced to preclude double recovery of the same costs as both attorney's fees and court costs.[8] HP

---

8. This case is distinguishable from *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990) (per curiam), relied on by HP, because there are circumstances tending to support a lesser attorneys' fee award. As the *Ragsdale* court acknowledged, even where the evidence of attorney's fees incurred is uncontradicted, the trier of fact may find some of the claimed fees to be unreasonable or unnecessary. *Ragsdale,* 801 S.W.2d at 882.

thus did not establish the amount of its reasonable and necessary attorney's fees as a matter of law and is not entitled to rendition in that amount. *See Smith*, 296 S.W.3d at 548.

Because we have meaningfully reduced the amount of HP's damages on appeal, we must reverse the attorney's fees award and remand for a determination of attorney's fees. *See Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex.2006) (holding that appellate court should reverse and remand issue of attorney's fees where damages are reduced on appeal in a manner that could affect the determination of reasonable and necessary attorney's fees); *Young v. Qualls*, 223 S.W.3d 312, 314–15 (Tex.2007) (same).

## 2. Attorney's fees for Appeal

■ For the same reasons, we conclude that HP has not established that the amount of such reasonable and necessary attorney's fees on appeal is $50,000 as a matter of law. Because the jury determined that the amount HP was entitled to recover on its claims was less than that calculated by HP, the jury could also reasonably have determined that the value assigned by HP's counsel to its services, at trial and on appeal, was too high in light of the results obtained. *See Smith*, 296 S.W.3d at 548. However, while the jury is free to determine that a lesser fee is reasonable, it is not free to determine that no fee should be awarded where there is evidence showing that some amount of attor-

ney's fees were reasonable and necessary and no evidence showing that the services rendered had no value. *Smith*, 296 S.W.3d at 548 ("Although it could have rationally concluded that, in light of the amount involved and the results obtained, a reasonable fee award was less than the full amount sought, no evidence supported the jury's refusal to award any attorney's fees[.]"); *Midland W. Bldg. LLC v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex.2009) ("While the jury could have rationally concluded that a reasonable and necessary fee was less than the amount sought, an award of no fees was improper in the absence of evidence affirmatively showing that no attorney's services were needed or that any services provided were of no value.").

Because HP did not prove the amount of its attorney's fees on appeal as a matter of law, but the jury's award of no attorney's fees for appeal is not supported by legally sufficient evidence, we remand the issue of HP's appellate attorney's fees for new trial.[9] *See Smith*, 296 S.W.3d at 548–49 (reversing and remanding for new trial on attorney's fees where party failed to establish amount of attorney's fees as a matter of law but jury award of $0 was not supported by legally sufficient evidence); *Midland W. Bldg. LLC*, 300 S.W.3d at 739 (same).

## Conclusion

We reverse the trial court's judgment with respect to the award of damages pur-

---

9. HP requested only that the Court reverse and render in its appellant's brief, but requested remand on the limited issue of attorney's fees in its reply brief. At trial, HP preserved its right to request remand through a motion for new trial on this issue. Under these circumstances, we conclude that Rule 43.3 authorizes this Court to remand the issue of appellate attorney's fees for new trial. Tex.R.App. P. 43.3 ("When reversing a trial court judgment, the court must render the judgment that the trial court should have ren-

dered, except when: (a) a remand is necessary for further proceedings or (b) the interests of justice require a remand for another trial."); *see also Majeed v. Hussain*, No. 03–08–00679–CV, 2010 WL 4137472 (Tex.App.-Austin Oct. 22, 2010) (mem. op.) *reconsideration en banc denied*, No. 03–08–00679–CV, 2010 WL 5575954 (Tex.App.-Austin Dec. 22, 2010, no pet.); *Jay Petroleum, L.L.C. v. EOG Res., Inc.*, No. 01–08–00541–CV, 2009 WL 1270251 (Tex.App.-Houston [1st Dist.] May 7, 2009, pet. denied).

suant to the jury findings on damage elements (d) and (e) and reform the judgment to award damages in the amount of $697,995.20 (the previous award of $876,810.61 minus $105,097.26 and $73,718.15) plus pre- and post-judgment interest at the rates stated in the judgment. We reverse the trial court's judgment with respect to the award of attorney's fees and remand for new trial on the amount of HP's reasonable and necessary attorney's fees at trial and on appeal. We affirm the trial court's judgment in all other respects.