Opinion issued August 6, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00775-CV

————————————

**JUAN JULIO MORALES, KATHRYN ALYCE MURPHY, AND
VANDERLEI BERNARDI, Appellants**

**V.**

**6800 SOUTHWEST FREEWAY, INC., Appellee**

On Appeal from the County Civil Court at Law No. 2
Harris County, Texas
Trial Court Case No. 976,947

## MEMORANDUM OPINION

6800 Southwest Freeway, a commercial property owner in Houston, entered

into a lease agreement with Juan Julio Morales, Kathryn Alyce Murphy, and

Vanderlei Bernardi, investors in a joint venture to open and operate Tradiçao

Brazilian Steakhouse, a fine dining restaurant. During the term of the lease agreement, various disputes arose among the parties, which culminated in the underlying lawsuit.

After a trial on the merits, the jury found, among other things, that (1) both 6800 and the restaurant failed to comply with the lease agreement; (2) neither of the parties' failure to comply was excused; and (3) the restaurant was the first party to fail to comply. 6800 moved for judgment on the jury's findings that favored it and to disregard the jury's finding against it. The trial court granted the motion. The restaurant appeals, contending that the trial court erred in: (1) disregarding the jury's finding that 6800 breached the lease agreement; (2) allowing 6800 to recover back rent; (3) refusing to submit the restaurant's Deceptive Trade Practices claim to the jury; and (4) denying the restaurant's request for declaratory relief and attorney's fees. Finding no error, we affirm.

**Background**

6800 bought a large commercial property at a foreclosure sale. It operated an automobile repair shop out of part of the building, but the building was larger than it needed, so it decided to rent the remainder of the premises. The building had previously housed a buffet restaurant, and much of the restaurant equipment remained inside. Bernardi, who was looking for a location in which to operate the restaurant, saw a "For Lease" sign while driving by the property. He walked

2

through the premises several times and eventually met with a part-owner and manager Joe Chan. Bernardi and Joe Chan negotiated the lease terms and signed a lease in June 2008, whereupon the restaurant investors began remodeling the restaurant space, a project that they anticipated would take at least two months.

Hurricane Ike struck the Houston area on September 13, 2008. The building sustained damage to the exterior; the wind tore off roof shingles and vinyl siding. 6800's property maintenance manager testified that he walked through the tenant space about two days before the hurricane and walked through again immediately after, and he did not see any interior damage. The maintenance manager recounted that, at the time, he asked the tenants if they noticed any damage, and they had said no. Chan testified that the parties did not discuss the installation of a separate electrical system before they signed the lease. The parties looked into sharing the existing electrical system, but discovered that the City would not permit it. In August 2008, after Bernardi looked into the cost of installing a separate system, he asked Chan for a loan to help pay for the installation, and Chan agreed to loan him $11,000.00.

The restaurant investors planned to open the restaurant in October 2008. By the beginning of October, the restaurant was not ready to open. Bernardi told Chan that the remodeling was taking longer than they expected, and he asked Chan if he could pay $8,000.00 for the rent that month instead of the $12,925.00 due under

3

the lease. Chan agreed to accept the lower payment. Bernardi approached Chan again in November and December, and, after some negotiation, Chan agreed to accept a discounted rental payment of $10,000.00 for each of those months as well.

The restaurant opened in January 2009. By that summer, the restaurant investors had made numerous complaints about the air conditioning system's inadequate ventilation and cooling capacity. 6800 made various attempts to repair the system, but did not resolve the problems in a satisfactory manner.

As the lease term continued, the relationship among the parties became more contentious. Bernardi failed to repay the $11,000.00 loan, and the restaurant failed to make timely rental payments. The restaurant did not pay any rent for September and October 2010, claiming that the lease had relieved them of the obligation to pay rent in September and October 2008, and that 6800 should apply a credit for the rental payments that the investors had made during that period.

6800 instituted a suit to evict the restaurant and for damages resulting from the restaurant's alleged breach of the lease agreement. The restaurant investors answered and counterclaimed for breach of the lease and violation of the Texas Deceptive Trade Practices Act.

The jury found that both 6800 and the restaurant investors had failed to comply with the lease agreement; that neither was excused from its failure to

4

comply; and that the restaurant investors were the first to fail to comply with the lease agreement.

## Discussion

### I. Breach of Lease Agreement

#### A. Applicable law

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Valero Mkt'g & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.). "A breach of contract occurs when a party fails or refuses to do something he has promised to do." *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston—[1st Dist.] 2009, pet. denied) (quoting *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). When, as here, the parties on both sides have allegedly failed to comply with their agreement, the fact finder must find not just whether each party materially breached the agreement, but which material breach occurred first. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004). The second inquiry answers which side is released from its obligations and which side is liable for contract damages. *See id.* "It is a fundamental principle of contract law that when one party to a contract commits a

5

material breach of that contract, the other party is discharged or excused from further performance." *Id.* at 196.

## B. Reconciling the Jury's Verdict

The jury made the following findings on the parties' breach of contract claims:

1. Did either of the parties named below fail to comply with the July 1, 2008 lease agreement?

   Answer "Yes" or "No" for each of the following:

   A. 6800 Southwest Freeway, Inc.

   Answer: Yes

   B. Juan Julio Morales, Kathryn Alyce Murphy, and Vanderlei Bernardi

   Answer: Yes

2. Was the failure to comply with the July 1, 2008 lease agreement excused?

   Failure to comply with the agreement is excused by the other parties' previous failure to comply with a material obligation of the same agreement.

   Answer "Yes" or "No" for each of the following:

   A. 6800 Southwest Freeway, Inc.

   Answer: No

   B. Juan Julio Morales, Kathryn Alyce Murphy, and Vanderlei Bernardi

   Answer: No.

Because the jury answered "No" to Question 2 for both 6800 and the restaurant investors, it also answered the following:

> 3. Who failed to comply with the July 1, 2008 lease agreement first?
>
> Answer: Tenants Juan Julio Morales, Kathryn Alyce Murphy, Vanderlei Bernardi

The restaurant investors complain that the trial court erred in disregarding the jury's finding that 6800 also breached the lease agreement and granting 6800's motion for judgment notwithstanding the verdict [jnov] on that issue.

### 1. Standard of review

A trial court may disregard a jury's verdict and render a jnov if the evidence is legally insufficient to support the jury's findings or if a directed verdict would have been proper because a legal principle precludes recovery. TEX. R. CIV. P. 301; *see Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822. The fact-finder is the

7

sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

### 2. *Analysis*

The restaurant contends that 6800 breached the lease agreement by failing to pay for the permitting and contracting costs associated with installing the separate electrical system. It cites Bernardi's testimony that Chan orally agreed that 6800 would get "whatever is necessary for us to open the restaurant, all the permits," asserting that Chan's promise necessarily included installation of the new electrical system, because that, too, required a permit. That alleged oral promise, however, cannot alter the obligations set forth in the lease, which allows for modification "only by a further writing that is duly executed by both parties." Bernardi's testimony thus does not raise a fact issue concerning 6800's duties under the lease.

In a "special provision" in the lease, 6800 expressly agreed to "build and install air conditioning, interior walls, and [r]estrooms." No provision exists concerning the electrical system. The lease places the responsibility to repair "major mechanical systems" on the landlord, but it provides that the "Tenant shall comply with all laws, orders, ordinances, and public requirements now or hereafter pertaining to Tenant's use of the Leased Premises."

8

Chan agreed to loan Bernardi $11,000.00 for the electrical system build-out, and Bernardi signed an IOU in which he acknowledged that he was:

> borrowing $11,000.00 from [6800] for building the electricity at [the restaurant]. I will pay first payment of $5,500 back to [6800] on January 01, 2009, and pay the second and last payment of $5,500.00 back to [6800] on February 1, 2009, I understand that there will be late fee[s] and interest . . . if I don't make the payments on time.

The jury found that Bernardi breached that loan agreement by failing to repay it, and Bernardi does not challenge that finding on appeal. Crediting all favorable evidence that reasonable jurors could believe and disregarding all contrary evidence except that which they could not ignore, we hold there was no evidence to support a finding that 6800 breached the lease agreement by failing to bear the responsibility for installing the separate electrical system in the restaurant's space.

The restaurant investors also point to evidence of 6800's failure to adequately repair the air conditioner in the restaurant, contending that legally sufficient evidence supports the jury's breach finding on this ground. The evidence shows that the air conditioner's performance was a source of contention among the parties over much of the lease term. Nevertheless, the trial court did not err in disregarding the breach finding against 6800, because the jury also found that the restaurant was the first party to materially breach the lease agreement. As a result, 6800 was excused from further performance under the lease. *See Mustang Pipeline Co.*, 134 S.W.3d at 196. The trial court correctly granted 6800's motion

for jnov, because this fundamental principle of contract law forecloses the restaurant's claim to damages flowing from the later breach.

This principle also precludes the restaurant investors' argument that the trial court should have entered offsetting judgments in favor of both parties. The restaurant investors point to the jury's finding that 6800's breach was not excused as in conflict with its finding that the restaurant investors were the first to breach, but they did not bring this issue to the trial court's attention before the jury was dismissed and therefore waived it. *See* TEX. R. CIV. P. 295; TEX. R. APP. P. 33.1. We hold that the trial court did not err in concluding that the jury's finding that the restaurant investors were the first to breach provides a reasonable basis for reconciling any conflict by disregarding the finding that 6800's breach was not excused. *See Shamoun v. Shough*, 377 S.W.3d 63, 69 (Tex. App.—Dallas 2012, pet. denied) ("[W]e may not strike down jury answers on the basis of conflict if there is any reasonable basis on which they can be reconciled.").

### C. *Judgment in Favor of 6800 for Unpaid Rent*

The restaurant investors contend that the trial court should not have entered judgment on the jury's finding that 6800 was entitled to recover two months' rent payments, because the evidence conclusively shows that Hurricane Ike rendered the restaurant space unfit for occupancy and that, as a result, the lease agreement excused the restaurant investors from their obligation to pay rent for October and

10

November 2008. We interpret this contention as a challenge to the legal sufficiency of the evidence supporting the verdict. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (holding that legal sufficiency challenge "will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.").

Paragraph 14 of the lease provides that the "Tenant [is] relieved from paying rent and other charges" during any period of the lease term in which "the Leased Premises or any part thereof . . . is so damaged by fire, windstorm, mother nature, casualty or structural defects that the same cannot be used for Tenant's purposes."

The record shows that the parties disputed whether Hurricane Ike rendered the restaurant unfit for occupancy. Although Bernardi testified to the contrary, 6800's property maintenance manager told the jury that he viewed the property both before and shortly after the storm and did not see any damage to the interior. At the time, no one from the restaurant notified 6800 of any damage in need of repair. The restaurant continued the remodeling immediately after the storm, and slow progress in the remodeling delayed the restaurant's opening, not any storm-

11

related damage.   We hold that sufficient evidence supports the jury's finding that the restaurant investors owed 6800 two months' of rent.

## II. *Refusal to Charge the Jury on the Restaurant's DTPA Claim*

The restaurant also challenges the propriety of the trial court's refusal to submit its DTPA claim to the jury.  We review a challenge to the trial court's jury charge under an abuse of discretion standard.  *Tex. Dep't of Hum. Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Powell Elec. Sys. v. Hewlett Packard Co.*, 356 S.W.3d 113, 122 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles.  *Tex. Dep't of Hum. Servs.*, 802 S.W.2d at 649; *Powell Elec. Sys.*, 356 S.W.3d at 122.  A trial court has wide discretion in submitting instructions and jury questions.  *Powell Elec. Sys.*, 356 S.W.3d at 122.

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices."  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); There are three elements to a DTPA claim: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a)(1)).

The restaurant premised its DTPA claim, in part, on allegations that Chan told Bernardi 6800 would get "whatever is necessary for us to open the restaurant, all the permits." That alleged oral representation, however, directly contradicts the written lease, which provides that the "[t]enant shall comply with all laws, orders, ordinances, and public requirements now or hereafter pertaining to Tenant's use of the Leased Premises." Because the parties did not execute a signed writing modifying this lease provision—which holds the restaurant responsible for complying with any permitting requirements—Chan's statement cannot, as a matter of law, constitute a producing cause of any damages.

Relying on *Continental Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 390 (Tex. App.—Texarkana 2003, pet. denied), the restaurant contends that 6800 impliedly warranted that it would perform the electrical system build-out in a good and workmanlike manner, and its alleged failure to do so violates the DTPA. But no implied warranty can attach to a nonexistent obligation. Thus, the trial court did not err in refusing to submit the restaurant investors' DTPA claim based on that implied warranty theory.

## II. *Denial of the Restaurant's Requests for Declaratory Relief and Attorney's Fees*

The restaurant investors sought declaratory relief addressing their rights under the lease agreement, including their obligation to pay rent for the two months following the hurricane. Their request for a declaration that 6800 breached

the lease agreement, however, does not change the basic character of the litigation as a breach of contract claim. *See AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 663 (Tex. App.—Houston [14th Dist.] 2007, 1994). The restaurant investors' claim for declaratory relief fails for the same reason that its breach of contract claim fails: the finding, supported by the evidence, that the restaurant was the first party to breach the lease agreement renders the restaurant liable for contract damages and relieves 6800 of its contractual duties. *See Mustang Pipeline Co.*, 134 S.W.3d at 196.

The restaurant cannot rely on its declaratory relief claim solely as a basis for recovery of attorney's fees absent appropriate relief. *See Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 490 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding that Declaratory Judgments Act did not supply basis for recovery of attorney's fees where claim for declaratory relief mirrored defense of breach of contract claim and company did not recover actual damages on breach of contract claim). Because the restaurant did not prevail on its breach of contract claim, the trial court did not err in refusing to award attorney's fees on based on the requested declaratory relief. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2010); *MBM Fin'l v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009) (contract litigant may not recover fees under section 38.001(8) unless it prevails on breach of contract claim and recovers damages).

## Conclusion

We hold that the trial court properly reconciled the jury's verdict. We further hold that the trial court did not err in refusing to submit the restaurant's Deceptive Trade Practices claim to the jury or in denying the restaurant's request for declaratory relief and attorney's fees. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.