**Opinion issued November 15, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00342-CV

———————————

**AMELIA COLVIN, Appellant**

**V.**

**TEXAS DOW EMPLOYEES CREDIT UNION, Appellee**

---

**On Appeal from the County Court at Law Number 2**
**Brazoria County, Texas**
**Trial Court Case No. CI040448**

---

## MEMORANDUM OPINION

Appellant, Amelia Colvin, challenges the trial court's rendition of summary

judgment in favor of appellee Texas Dow Employees Credit Union (TDECU), in

its suit against Colvin for breach of contract relating to credit card debt and debt

arising from a line of credit. The trial court rendered judgment for TDECU in the total amount of $37,039.40, plus interest, for the unpaid balance on the three agreements and $3,500 for attorney's fees. In eight issues, Colvin contends that the trial court erred by granting summary judgment in favor of TDECU, overruling her objections to a TDECU employee's affidavit, and by not granting her no-evidence motion for summary judgment.

We affirm in part and reverse in part.

## Background

TDECU sued Colvin for past-due debt under three agreements, one credit card (first agreement) and two amounts drawn against a line of credit (second agreement and third agreement). TDECU sought damages of $12,444.30 plus interest at a rate of 7.75 percent under the first agreement; $3,754.92 plus interest at a rate of 10.25 percent under the second; and $20,840.18 plus interest at a rate of 6.24 percent under the third. TDECU also sought attorney's fees. Colvin answered, denying TDECU's claims and asserting that TDECU failed to prove the existence of the agreements. Colvin also asserted several affirmative defenses.

## A.     TDECU's Motion for Summary Judgment

TDECU moved for summary judgment, asserting that the undisputed summary judgment evidence showed that Colvin and TDECU had reached agreements for all three accounts and that Colvin breached by failing to make

2

payments required under those agreements. TDECU's summary judgment evidence consisted of the affidavit of Melissa Ramirez, custodian of TDECU's business records, which describes three contracts with Colvin, states the interest rate for each, and states the balance TDECU claims is due on each. TDECU also submitted documentary evidence related to each of the three agreements and an affidavit on attorney's fees. We will address the summary judgment evidence for each of the agreements in turn.

### 1. The First Agreement

TDECU's summary judgment evidence for the first agreement included a credit card application signed by Colvin. It was marked "approved" with a notation indicating a credit limit of $2,000. With respect to this agreement, Ramirez averred in her affidavit that Colvin "executed" an application for a Visa credit card, which had an interest rate of 7.75 percent and was "payable as therein set out to the order of [TDECU]." Ramirez averred that Colvin had defaulted under the first agreement "by failing to make the payments due thereunder." Ramirez concluded, "After allowing all lawful offsets, credits and payments against Agreement 1, principal balance due and payable is Twelve Thousand Four Hundred Forty Four and 30/100 Dollars ($12,444.30), plus interest at the rate of seven and 75/100 percent (7.75%) per annum from and after August 23, 2007, and attorney's fees."

3

TDECU also included correspondence it had sent to Colvin regarding amounts past due. The first notice informed Colvin she was in default and the second was a notice of acceleration. No summary judgment evidence indicates how TDECU calculated the $12,444.30 amount it contended was due under this agreement.

2.     **Second and Third Agreements**

TDECU's summary judgment evidence for the second and third agreements included a "Credit and Security Agreement" for an "Open-End" credit plan, which is signed by Colvin. The agreement specifically stated it was a master agreement that would govern separate "subaccounts" opened under the plan. The Credit and Security Agreement explained that money borrowed under the agreement was subject to a finance charge and set forth the details of how the finance charge would be calculated:

> [The finance charge] begins on the date of each advance. A finance charge will be computed separately for each separate balance under the Plan. To compute the finance charge, the unpaid balance for each day since your last payment (or since an advance if you have not yet made a payment) is multiplied by the applicable daily periodic rate. The sum of these amounts is the finance charge owed. The balance used to compute the finance charge is the unpaid balance each day after payments and credits to that balance have been subtracted and any additions to the balance have been made.

The second agreement was for an amount Colvin borrowed under the master agreement. TDECU's summary judgment evidence on this agreement included a

4

June 22, 2005 "Open-End Disbursement Receipt," which reflected a loan of $5,000 made on a subaccount under the Credit and Security Agreement. The receipt reflects TDECU made this loan with an interest rate of 10.25 percent, a daily periodic rate of 0.028082 percent, and a monthly payment rate of $107 to begin on July 22, 2005. The receipt stated that Colvin agreed to make payments in accordance with the Credit and Security Agreement. Another document, with the heading "subsequent action" contained the same account information, interest rate, and monthly payment rate as the unsigned Open-End Disbursement Receipt. It reflected a balance of $3,977.12 and was signed by Colvin.

TDECU also submitted the notice of default and notice of acceleration it sent Colvin with respect to the second agreement. In her affidavit, Ramirez averred that after "allowing all lawful offsets, credits and payments" Colvin owed $3,754.92 plus interest at a rate of 10.25 percent on the second agreement.

For the third agreement, TDECU submitted an additional "Open-End Disbursement Receipt," showing a $250 loan at 8.75 percent interest. Colvin signed this receipt on January 8, 2003, the same day she signed the Credit and Security Agreement. TDECU also submitted subsequent receipts showing increases in the credit line available to Colvin. The final receipt showed a line of credit of $25,000 with an interest rate of 6.24 percent. Although the subsequent receipts were not signed by Colvin, the first of these receipts was stamped "PER

MEMBER REQUEST" on the signature line. TDECU also submitted a notice of acceleration and demand for payment for the third agreement, stating the balance due was $20,840.18, plus interest at 6.24 percent. Ramirez averred that TDECU had applied "all lawful offsets, credits and payments" to the third agreement and that the balance was $20,840.18 plus interest at a rate of 6.24 percent.

## B.    Colvin's Response and No-Evidence Motion for Summary Judgment

Colvin submitted her own affidavit. Colvin averred that she had a breakdown in her relationship with TDECU. She stated that she had made timely payments on her loans, but TDECU refused to accept her checks, insisting on cash or a money order. Colvin attached to her affidavit a copy of a check that she wrote for $107 and had tendered to TDECU, which it returned to Colvin along with a letter describing the check as an unacceptable form of payment. Colvin asserted that TDECU's actions, not hers, resulted in the loans not being paid.

Colvin also filed her own motion for summary judgment, arguing there was no evidence demonstrating the existence of the first and second agreements because there were no signed agreements and no accounting statements or other evidence to establish the amounts due and owing. In response to Colvin's motion, TDECU submitted the evidence supporting its motion for summary judgment, plus an account statement showing the payment history on the third agreement for the two years before Colvin's alleged default.

6

The trial court granted TDECU's motion for summary judgment and denied Colvin's no-evidence motion for summary judgment. The trial court signed a final judgment awarding the damages requested in TDECU's petition and attorney's fees of $3,500. Colvin appealed.

**Standard of Review**

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A plaintiff moving for summary judgment on its claim must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the non-movant, take all evidence favorable to the non-movant as true, and resolve any doubts in favor of the non-movant. *Valence Operating Co.*, 164 S.W.3d at 661.

When a party moves for summary judgment on the ground that there is no evidence of one or more essential elements of the non-movant's claims, the movant must specifically state the elements of the non-movant's claims as to which there is

no evidence. TEX. R. CIV. P. 166a(i); *Spradlin v. State*, 100 S.W.3d 372, 377 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The burden then shifts to the non-movant to produce evidence that raises a fact issue on the challenged elements. *Spradlin*, 100 S.W.3d at 377. "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i).

When, as here, both parties move for summary judgment, the appealing party may challenge the denial of its own motion as well as the judgment in favor of the prevailing party. *CU Lloyd's v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998); *Spradlin*, 100 S.W.3d at 377. Each party must carry its own burden, however, both as movant and in response to the other party's motion, as non-movant. *CU Lloyd's*, 977 S.W.2d at 569; *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 703 (Tex. App.—Houston [1st Dist.] 1987, writ denied). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Valence Operating Co.*, 164 S.W.3d at 661.

**Colvin's Objections to the Form of TDECU's Summary Judgment Evidence**

In her third issue, Colvin argues that Ramirez's affidavit was improper and should not have been considered by the trial court.[1]

**A.     Applicable Law**

Defects in the form of an affidavit or its attachments must be preserved by an objection in the trial court. *See* TEX. R. CIV. P. 166a(f); *see Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990); *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also* TEX. R. APP. P. 33.1(a)(1).   The party making the objection must also obtain a ruling at or before the summary judgment hearing.  *Vice*, 318 S.W.3d at 11.  "[A] trial court's ruling on an objection to summary-judgment evidence is not implicit in its ruling on the motion for summary judgment."  *Delfino v. Perry Homes,* 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  In contrast, an objection and ruling are not required to preserve a complaint concerning a defect in substance of an affidavit; such a complaint may be raised for the first time on appeal.  *Dodge v. Durdin*, 187 S.W.3d 523, 532 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Rizkallah v. Conner*, 952 S.W.2d 580, 585 (Tex. App.—Houston [1st Dist.] 1997, no writ)).

---

[1]     As part of her seventh issue, Colvin contends that Ramirez's affidavit is conclusory.  We address this issue below in our discussion of the merits of the summary judgment.

**B.     Analysis**

In her response to TDECU's motion for summary judgment, Colvin argued that the trial court erred in considering the Ramirez affidavit because it was hearsay and not based on Ramirez's personal knowledge.  She also objected that Ramirez's affidavit was not the best evidence of the terms of the agreements.  An objection that the affiant lacks personal knowledge is an objection to the form of the affidavit.  *Dodge*, 187 S.W.3d at 532 (citing *Rizkallah*, 952 S.W.2d at 585).  An objection that an affidavit contains hearsay is also an objection to form.  *Green v. Indus. Speciality Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  Likewise, a best-evidence objection is a form objection.  *Ogueri v. Tex. S. Univ.*, No. 01-10-00228-CV, 2011 WL 1233568, at *6 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.) (citing *Einhorn v. LaChance*, 823 S.W.2d 405, 410 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.)); *see also Crow v. Rockett Special Util. Dist.*, 17 S.W.3d 320, 324 (Tex. App.—Waco 2000, pet. denied) (stating "best evidence" objection is objection to form), *disapproved of on other grounds by Binur v. Jacobo*, 135 S.W.3d 646 (Tex. 2004).  Nothing in the record shows that the trial court ruled on these objections before the summary judgment hearing.  Therefore, Colvin has not preserved her objections concerning the defects in form of Ramirez's affidavit.

10

*See* TEX. R. CIV. P. 166a(f); *Grand Prairie Indep. Sch. Dist.*, 792 S.W.2d at 945;

*Vice*, 318 S.W.3d at 11.

We overrule Colvin's third issue.

**Propriety of Summary Judgment for TDECU**

In her first, second, fourth, seventh, and eighth issues, Colvin argues that the

summary judgment evidence did not establish TDECU's breach-of-contract claims

as a matter of law and that summary judgment was, therefore, improper.

**A.     Breach of Contract**

To be entitled to summary judgment on its breach-of-contract claim,

TDECU was required to prove, as a matter of law, "(1) the existence of a valid

contract; (2) performance or tendered performance by the plaintiff; (3) breach of

contract by the defendant; and (4) damages sustained as a result of the breach."

*Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 235–36 (Tex. App.—

Houston [1st Dist.] 2008, no pet.) (citing *Winchek v. Am. Exp. Travel Related

Servs. Co.*, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.)  A

binding contract is formed when the following elements are present: (1) an offer,

(2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of

the minds, (4) each party's consent to the terms, and (5) execution and delivery of

the contract with the intent that it be mutual and binding.  *Id.*  To be enforceable, a

contract must be sufficiently certain to enable a court to determine the rights and

11

responsibilities of the parties. *Id.* The material terms of a contract must be agreed upon before a court can enforce the contract. *Id.* The interest rate is a material term of a contract for the loan of money. *Id.* (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)).

Colvin argues that the summary judgment evidence does not establish the existence of any agreement between her and TDECU because TDECU failed to present the original loan agreements to prove that Colvin signed an agreement with TDECU. Colvin also argues that TDECU failed to establish the material terms to which the parties agreed. Finally, Colvin argues that the evidence was insufficient to prove TDECU's alleged damages. We address each agreement in turn.

### 1. First Agreement

Colvin contends that TDECU's summary judgment evidence does not prove TDECU's damages as a matter of law because the Visa application indicates a credit limit of $2,000 but TDECU sought $12,444.30 in damages on this agreement without offering any proof of how it calculated its alleged damages.

In support of its motion for summary judgment, TDECU offered Colvin's signed credit card application and Ramirez's affidavit stating the applicable interest rate and the amount due after all lawful offsets, credits and payments. Ramirez averred:

> "Exhibit "A-1" is a true and correct copy of that certain Visa Application dated August 6, 2003, executed by Amelia Colvin,

12

bearing interest at the rate of seven and 75/100 percent (7.75%) per annum ("Agreement 1"), being payable as therein set out to the order of Texas Dow Employees Credit Union.

"By the terms of Agreement 1, Defendant agreed to pay to Plaintiff all sums advanced on behalf of Defendant by Plaintiff, together with interest at the rate of seven and 75/100 percent (7.75%) per annum . . . .

. . . .

. . . . After allowing all lawful offsets, credits and payments against Agreement 1, principal balance due and payable is Twelve Thousand Four Hundred Forty Four and 30/100 Dollars ($12,444.30), plus interest at the rate of seven and 75/100 percent (7.75%) per annum from and after August 23, 2007, and attorney's fees.

TDECU offered no other evidence demonstrating how it calculated its alleged damages. In other words, there is no evidence—for example, monthly statements—explaining how a credit card account with a $2,000 limit allegedly yielded a principal balance of over $12,000.

Summary judgment evidence of damages in credit card cases is sufficient where it "provide[s] detailed explanations of the cost of credit" and "the methodology employed" to calculate the balance owed. *Winchek*, 232 S.W.3d at 205; *see also Duran v. Citibank (S.D.), N.A.*, No. 01-06-00636-CV, 2008 WL 746532, at *5 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, no pet.) (mem. op.) (affirming summary judgment where evidence "provided detailed explanations of the cost of credit and the methodology employed to determine the applicable interest rate"). However, in *Wande v. Pharia, L.L.C.*, this court reversed a

13

summary judgment for the creditor on a credit card debt on the basis that the creditor had not established its alleged damages as a matter of law. No. 01-10-00481-CV, 2011 WL 3820774, at *5 (Tex. App—Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op). Pharia, the creditor, adduced as summary judgment evidence a cardholder agreement and monthly statements reflecting charges incurred on the account. *Id.* at *2. The cardholder agreement expressly referred to another document as part of the overall Credit Card Agreement and stated that the other document indicated the applicable interest rate. *Id.* at *4–5. Additionally, the most recent monthly statement indicated that Wande owed a balance of $13,220.41, but Pharia sought $24,418.82 in damages. *Id.* at *5 & n.2. This court noted that the cardholder agreement had a section entitled "Finance Charges" that was illegible in the copy submitted as summary judgment evidence. *Id.* at *5. The cardholder agreement expressly referred to another document containing terms of the overall Credit Card Agreement, but that other document was not introduced into evidence. *Id.* This court also explained that Pharia had not adduced any evidence "setting forth the calculations used by Pharia to arrive at its claimed outstanding balance," noting that the claimed balance was almost double the last outstanding balance shown in a monthly statement. *Id.* at *5 & n.2. Concluding "Pharia does not direct us to any document in the record supporting the entire

14

claimed amounts," this court reversed because the evidence did not conclusively establish Pharia's damages. *Id.* at *5.

In this case, as in *Wande*, TDECU has not established as a matter of law the amount it claims under the first agreement. The Visa application indicates that the Visa card had a credit limit of $2,000. But Ramirez averred in her affidavit that Colvin's "principal balance due and payable is Twelve Thousand Four Hundred Forty Four and 30/100 Dollars ($12,444.30), plus interest at the rate of seven and 75/100 percent (7.75%) per annum from and after August 23, 2007." Although Ramirez also averred that Colvin agreed to a 7.75% interest rate, Ramirez does not explain how TDECU arrived at its claimed damages figure. Nor did TDECU offer any monthly statements or other documentary evidence reflecting charges, payments, or interest calculations supporting the $12,444.30 amount. In other words, the summary judgment evidence does not explain how TDECU suffered damages in the amount to $12,444.30 when the credit card application on which it relies indicates a credit limit of $2,000. We therefore hold that TDECU has failed to adduce sufficient evidence of damages to be entitled to summary judgment on the first agreement. *See id.*; *see also Williams*, 264 S.W.3d at 236 (reversing summary judgment because, although creditor offered affidavit stating agreed interest rate, creditor "did not produce the actual agreement or any other document that established the agreed terms, including the applicable interest rate or the

15

method for determining the applicability and amount of finance charges" and noting creditor offered no explanation of how debt doubled from last billing statement to amount sought at trial).

We sustain Colvin's issues concerning summary judgment on the first agreement.

## 2. Second Agreement

Colvin also argues that the evidence was insufficient to show formation of a contract with respect to the second agreement. Colvin argues no evidence establishes the material terms of the agreement, her consent to the terms, or delivery of the contract.

*Material Terms*

As summary judgment evidence pertaining to the second agreement, TDECU submitted a Credit and Security Agreement signed by Colvin on January 8, 2003. Under the terms of this agreement, different lines of credit would be opened as "subaccounts" for Colvin. A receipt and a "subsequent action" agreement dated June 22, 2005 showed a $5,000 loan and specified a 10.25 percent interest rate and the applicable daily periodic rate, but it was not signed by Colvin. The subsequent action agreement, signed by Colvin, identified the original loan by date—June 22, 2005—and showed a loan with an interest rate of 10.25 percent, a balance of $3,977.12, and monthly payments of $107. These documents show the

16

material terms of the agreement—the amount of the loan, the interest rate, and the method of calculating finance charges. *See Duran*, 2008 WL 746532, at *4 (holding credit card agreement that explained how minimum monthly payment determined and how finance charges calculated "was sufficiently definite to enable a court to determine the rights and responsibilities of each party").

*Consent to the Terms and Delivery of the Contract*

Colvin argues that the evidence does not show that she consented to an agreement with TDECU because it does not reflect that she signed any agreement. However, Colvin signed both the Credit and Security Agreement and the document titled subsequent action. In any event, a signature is not an absolute requirement to show consent to a contract. Both consent and the delivery of a contract may be shown by "acts or words showing that the parties intended the contract to become effective." *Duran*, 2008 WL 746532, at *4 (quoting *Awad Tex. Enters., Inc. v. Homart Dev. Co.*, 589 S.W.2d 817, 819–820 (Tex. Civ. App.—Dallas 1979, no writ)). "[W]hen the parties manifest an intent through their actions and words that the contract become effective, delivery is shown." *Id.* (quoting *Winchek,* 232 S.W.3d at 204). "In other words, when parties manifest an intent through their actions and words that a contract become effective, manual delivery is immaterial to contract validity." *Id.* In response to TDECU's motion for summary judgment, Colvin included a check she made payable to TDECU for $107, the amount due

17

under the subsequent action agreement. Colvin's attempted payment on the account for the amount shown as due on the agreement is sufficient to show that she assented to the terms of the agreement. We conclude the summary judgment evidence establishes that Colvin agreed to the terms of the contract notwithstanding the lack of her signature on every document and the purported failure of TDECU to manually deliver the contract. *See Winchek*, 232 S.W.3d at 204 (holding that use of credit card and payments to account demonstrated assent to and delivery of contract); *Duran*, 2008 WL 746532 at *4 (noting that appellant's use of credit card and payments made on card without disputing accuracy of credit card statement showed both that appellant assented to terms and delivery of contract).

*Damages*

Colvin also argues that "there is no financial accounting whatsoever that proves any damages." The Credit and Security Agreement explains that TDECU would calculate finance charges based on the applicable periodic rate and the receipt specified a daily periodic rate of 0.028082%. The subsequent action document showed payments had been credited against the account so that a balance of $3,977.12 remained as of the date the document was created. And Ramirez averred that Colvin failed to make any payments on the second agreement account after August 22, 2007 and that, after all credits, offsets, and payments, she

18

owed $3,754.92 plus interest at a rate of 10.25 percent.

We conclude that Ramirez's affidavit, combined with the Credit and Security Agreement, the June 22, 2005 receipt, and the subsequent action document were sufficient to establish damages.[2] *See Winchek*, 232 S.W.3d at 204 (affirming summary judgment where creditor's representative testified to total outstanding balance, and credit card agreement and monthly statements established applicable interest rate and method of calculating interest and finance charges); *Rogers v. Unifund CCR Partners*, No. 01-10-01146-CV, 2012 WL 1379631, at \*5 (Tex. App.—Houston [1st Dist.] Apr. 19, 2012, no pet.) (mem. op.) (affirming summary judgment where evidence included credit card agreement, monthly statements, and creditor's affidavit, showing amount of past-due principal and interest and interest rate and explained increase from last monthly statement to damages sought at trial was based on applying agreed interest rate to last balance).

---

[2] In her seventh issue, Colvin contends that Ramirez's statements concerning damages are conclusory and therefore no evidence. An affidavit is conclusory if it states "a conclusion without any explanation" or asks the fact-finder to "take my word for it." *Arkoma Basin Exp. Co. v. FMF Assocs. 1990-A Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008); *see also* Black's Law Dictionary 308 (9th ed. 2009) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"). Affidavits containing conclusory statements—statements that fail to provide the underlying facts to support the conclusion—are not proper summary judgment evidence. *Dolcefino v. Randolph,* 19 S.W.3d 906, 925–27 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Here, Ramirez's affidavit is supported by documentary evidence establishing the underlying facts—the terms of the agreement and the method for calculating the balance owed. Because it is supported by facts, the affidavit is not conclusory. *See Arkoma Basin Exp. Co.*, 249 S.W.3d at 389. We overrule Colvin's seventh issue.

19

We conclude that TDECU met its burden to establish the existence of a valid contract and its damages as a matter of law, and Colvin has not raised any genuine issues of material fact with respect to the second agreement.

### 3.     Third Agreement

Colvin also argues that the trial court erred in granting summary judgment with respect to the third agreement.  Her arguments are essentially identical to those made concerning the second agreement, and, for similar reasons, we overrule them.

The evidence that TDECU presented on the third agreement included the Credit and Security Agreement and receipts issued pursuant to that agreement. TDECU also submitted a September 11, 2009 statement showing payments made and fees charged on the account from March 1, 2007 until April 29, 2009.  The statement reflected an ending balance of $20,840.18.  In an affidavit Colvin denied that she signed any documents forming the agreements.  The Credit and Security Agreement bears her signature.  Additionally, in one of her affidavits Colvin admitted she "had performed the greater part of the covenants into which was entered [sic] from 2005 until 2007" and that she "performed [her] duties under the alleged contract by sending a check or making deposits into an account [from] which TDECU could withdraw."  A signature is not necessary to show the existence of an agreement between parties.  *See Winchek*, 232 S.W.3d at 204.

20

Here, by making payments on the account, Colvin effectively consented to the terms of the agreement. *See id.* (holding use of credit card and payments to account demonstrated existence of contract and consent by debtor to be bound by contract).

Moreover, the evidence was sufficient to establish TDECU's damages as a matter of law. TDECU provided a Credit and Security Agreement specifying the method for calculating finance charges. It also included documentation showing increases in Colvin's available credit and billing statements reflecting charges and payments to the account. This evidence, combined with Ramirez's affidavit, establishes the amount of damages owed to TDECU. *See id.* (affirming summary judgment where evidence included card agreement, billing statements, and creditor's affiant testified about total outstanding balance and that appellant failed to make payments in full on balances due); *see also Rogers*, 2012 WL 1379631, at *5. We conclude that TDECU met its burden and established the existence of a valid contract as a matter of law and Colvin has not raised any genuine issues of material fact with respect to the third agreement.

We sustain Colvin's arguments concerning the first agreement and overrule the arguments concerning the second and third agreements.

## B.     Statute of Limitations

In her first issue, Colvin argues that the statute of limitations barred TDECU's right to recovery.  Colvin, as the party relying on an affirmative defense to defeat summary judgment, had the burden to come forward with summary judgment evidence establishing a fact issue on each element of the affirmative defense.  *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 614 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  Colvin did not offer any evidence in support of her statute-of-limitations defense.  In her response to TDECU's motion, Colvin only referred to the copies of the agreements and documents attached to TDECU's motion, arguing that they were dated more than four years before TDECU filed suit and thus TDECU's claims were barred "[o]n the face [o]f it."

The statute of limitations on a claim for debt based on breach of contract is "four years after the day the cause of action accrues."  TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (West 2002); *Williams*, 264 S.W.3d at 234.  Colvin argues that the action accrued with respect to the first agreement on the day she signed her application, August 6, 2003, and for the second and third agreements, on the day she first borrowed against the line of credit, June 22, 2005, and January 8, 2003, respectively.  "It is well-settled law that a breach of contract claim accrues when the contract is breached."  *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). TDECU submitted the notices of default it sent to Colvin for each of the three

agreements. The notices indicate that Colvin breached the first and second agreement in August 2007, when she failed to make the payments due. TDECU filed its original petition in this case on March 31, 2008. The notice concerning the third agreement indicated Colvin breached it by failing to make a payment due on December 12, 2008. TDECU's amended petition asserting breach of the third agreement was filed within four years of that date, on August 9, 2010. Nothing "on the face of" TDECU's petition or summary judgment motion and evidence indicates that the four-year limitations period had expired on any of TDECU's breach-of-contract claims, and Colvin offered no other summary judgment evidence to raise a fact issue on limitations. *See Williams*, 264 S.W.3d at 234 (holding debtor failed to raise fact issue on limitations defense when summary judgment evidence showed suit commenced within four years of debtor's last payment and debtor offered no contradicting evidence).

We overrule Colvin's first issue.

### Texas Rule of Civil Procedure 185

In her fifth and seventh issues, Colvin argues that the trial court erroneously granted summary judgment under Texas Rule of Civil Procedure 185.

Texas Rule of Civil Procedure 185 pertains to sworn accounts. *See* TEX. R. CIV. P. 185. This Court has previously held that suits for collection of credit-card debt are not suits on sworn account under Rule 185, unless the card issuer is also

23

the provider of the purchased goods or services.  *Williams*, 264 S.W.3d at 235; *see also Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d 890, 893 n.3 (Tex. App.—Dallas 2008, no pet.) (noting that Rule 185 suit on sworn account "is not a proper tool for credit card collection").  Moreover, TDECU did not plead in its petition that Rule 185 applied or that this was a suit on a sworn account.  Nor did TDECU move for summary judgment on Rule 185 grounds.  Rather, in both its petition and motion for summary judgment, TDECU argued that the trial court should grant summary judgment under a breach of agreement theory.

We overrule Colvin's fifth and seventh issues to the extent that they challenge the trial court's allegedly erroneous reliance on Rule 185.

## Colvin's No-Evidence Motion for Summary Judgment

In her sixth issue, Colvin argues that the trial court erred in denying her no-evidence summary judgment motion.  Because we have concluded that TDECU showed the existence of an agreement as a matter of law with respect to the second and third agreement, we consider the evidence relating to the first agreement only.

We review a no-evidence summary judgment by construing the record in the light most favorable to the non-movant and disregarding all contrary evidence and inferences.  *Patriacca v. Frost*, 98 S.W.3d 303, 306 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  A trial court improperly renders a no-evidence summary judgment if the non-movant presents more than a scintilla of probative evidence to

24

raise a genuine issue of material fact. *Greathouse v. Alvin Indep. Sch. Dist.*, 17 S.W.3d 419, 423 (Tex. App.—Houston [1st Dist.] 2000, no pet.). More than a scintilla of evidence exists when the evidence "would allow reasonable and fair-minded people to differ in their conclusions." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

### 1. Affirmative Defenses

After adequate time for discovery, a party "may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i); *accord Waite v. Woodard, Hall & Primm, P.C.*, 137 S.W.3d 277, 280 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A no-evidence motion for summary judgment, therefore, is proper only when filed by the party that does not have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Waite*, 137 S.W.3d at 280–81. Colvin frames her arguments as the failure of TDECU to refute Colvin's affirmative defenses, but here, Colvin, as the non-movant, was the party who bore the burden of proof at trial with respect to the affirmative defenses. Therefore Colvin could not properly seek a no-evidence motion on any of her affirmative defenses. *See* TEX. R. CIV. P. 166a(i); *Waite*, 137 S.W.3d at 280 (stating party with burden of proof may not move for no-evidence motion for summary judgment).

## 2. First Agreement

Colvin contends that there is no evidence that TDECU is the legal and equitable holder of the agreement, that Colvin defaulted, or that TDECU credited Colvin for all just and lawful offsets. Colvin also asserts that there is no evidence that she signed an agreement with TDECU.

Although Colvin argues that the Ramirez affidavit is inadmissible evidence, we have already concluded that the trial court did not err in considering the affidavit. A summary judgment may be based on an affidavit that is "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been easily controverted." TEX. R. CIV. P. 166A(c). In her affidavit, Ramirez stated that TDECU was the legal and equitable holder of all three accounts, and Colvin did not controvert this. Therefore, there was some evidence that TDECU owned the accounts. *See Hou-Tex Printers, Inc. v. Marbach*, 862 S.W.2d 188, 191 (Tex. App.—Houston [14th Dist.] 1993, no writ) (stating ownership of note may be established through affidavit) (citing *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex. 1983)); *E. Plano Retail Joint Venture v. Amwest Sav. Ass'n*, No. 05-93-01573-CV, 1994 WL 450433, at *4 (Tex. App.—Dallas Aug. 18, 1994, writ denied) (mem. op.) (citing *Zarges*, 652 S.W.2d at 369) (holding uncontroverted affidavit established plaintiff was owner and holder of note for summary judgment purposes). Ramirez also averred that Colvin had

defaulted by failing to make required payments, and Colvin did not controvert this testimony. Ramirez also stated that all "lawful offsets, credits, and payments" had been applied to the account, and Colvin failed to controvert this. Finally, concerning Colvin's contention that there is no evidence that she signed an agreement, we have already explained that the existence of an agreement can be shown even absent the signature of the credit card debtor. *See Winchek*, 232 S.W.3d at 204. Because TDECU raised a fact issue on each challenged element on which it bore the burden of proof, we conclude that the trial court did not err by denying Colvin's no-evidence motion for summary judgment on the first agreement.

We overrule Colvin's sixth issue.

## Attorney's fees

Within her eighth issue, Colvin raises several challenges to the trial court's award of attorney's fees. For the reasons that follow we conclude that we must remand the issue of attorney's fees and therefore do not address this portion of Colvin's eighth issue.

An award of attorney's fees must be supported by evidence that the fees were both reasonable and necessary. *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 127 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Generally, the determination of reasonable attorney's fees is a question of fact and

the testimony of an interested witness, such as a party to the suit, though not contradicted, does no more than raise a fact issue to be determined by the jury." *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010).  The trier of fact can consider the amount in controversy, the time and effort required, and the expertise of counsel in arriving at a reasonable amount of attorney's fees.  *Powell Elec. Sys., Inc.*, 356 S.W.3d at 128; *see also Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (amount involved and results obtained are among factors for trier of fact to consider when awarding attorney's fees).  When an amount of damages is meaningfully reduced, the issue of attorney's fees should ordinarily be retried unless we are "reasonably certain that the jury was not significantly influenced" by the erroneous damage award.  *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006); *see also Young v. Qualls*, 223 S.W.3d 312, 314–15 (Tex. 2007) (applying the same reasoning to a trial court's award of attorney's fees); *Bossier Chrysler–Dodge II, Inc. v. Rauschenberg*, 238 S.W.3d 376, 376 (Tex. 2007); *Powell Elec. Sys., Inc.*, 356 S.W.3d at 128.  Here, because the amount of damages for the first agreement accounts for over one third of the total damages, we cannot be reasonably certain that the trial court was not significantly influenced by the erroneous damage award.  *See Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 705 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (remanding issue of attorney's for retrial when on appeal trial court's judgment

was reduced by over half).

We therefore remand this case on the issue of attorney's fees.

## Conclusion

We reverse the trial court's summary judgment on the first agreement and affirm the trial court's judgment for the second and third agreements. We also reverse the trial court's award of attorney's fees. We remand this case for further proceedings consistent with this opinion.



                                          Rebeca Huddle
                                          Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.